## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TANYA HOLCOLM,

       Plaintiff,

                                        Case No. 13-14706

      v.                             HON. TERRENCE G. BERG

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 13) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 8)

## I.  PROCEDURAL HISTORY

### A. Proceedings in this Court

Plaintiff Tanya Holcolm filed this action for judicial review of an adverse decision of the Commissioner of Social Security on November 13, 2013 pursuant to 42 U.S.C. § 405(g).  (Dkt. 1).  Plaintiff requests that the Court reverse the unfavorable decision of the Commissioner of Social Security and award her Social Security Disability Benefits or that in the alternative, that the Court remand the case to Administrative Law Judge ("ALJ") Regina Sobrino for further consideration. The matter is now before the Court on cross-motions for summary judgment.  (Dkt. 8, Dkt. 13).  For the reasons set forth below, the Court **GRANTS** Defendant Commissioner of Social Security's motion for summary judgment, **DENIES** Plaintiff's motion for summary judgment and **AFFIRMS** the findings and conclusions of the ALJ.

**B. Administrative Proceedings**

Plaintiff filed the instant claims on May 17, 2011, alleging that her disability began on February 25, 1997. (Tr. 18.) The Commissioner initially denied Plaintiff's claims on September 13, 2011. (*Id.*) In response, Plaintiff requested a hearing, which was held on June 20, 2012 before an ALJ. (*Id.*) On September 11, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 29.) On September 19, 2012, Plaintiff sent a request for review of the ALJ's decision to the Appeals Council. (Tr. 12.) On September 10, 2013, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

## II. FACTUAL BACKGROUND

**A. Plaintiff's Medical History**

Plaintiff, a 42-year-old woman, suffers from a variety of ailments. (Tr. 147.) She stands 5 feet 4 inches tall and weighs 200 pounds; she is considered obese. (Tr. 152.)

Plaintiff has a history of postpartum cardiomyopathy[1], or weakness of the heart muscle, dating back to 1997 when she gave birth to twins. (Tr. 21.) Plaintiff suffers from chest pains and heart palpitations. On December 6, 2010, Dr. Gary

---

[1] Postpartum cardiomyopathy or peripartum cardiomyopathy is "a weakness of the heart muscle that by definition begins sometime during the final month of pregnancy through about five months after delivery, without any other known cause." John Hopkins Medicine, *Peripartum Cardiomyopathy*, http://www.hopkinsmedicine.org/heart_vascular_institute/clinical_services/centers_excellence/womens_cardiovascular_health_center/patient_information/health_topics/peripartum_cardiomyopathy.html (last visited Mar. 18, 2015).

Weber, D.O., examined Plaintiff and found that her chest pain was "not cardiac in origin." (Tr. 220.)  He instructed Plaintiff to treat her chest with moist heat.  (*Id.*)  Dr. Weber's finding was confirmed in a December 28, 2010 echocardiogram that showed that Plaintiff's left ventricle had "normal systolic function." (Tr. 219.)  Months later, in February 2011, Plaintiff was examined by Dr. Matthew Ebinger who found that Plaintiff had "completely recovered" from postpartum cardiomyopathy.  (Tr. 253.)

In addition to post-partum cardiomyopathy, Plaintiff also suffers from neurocardiogenic syncope, or fainting, and she fears "passing out" at any time. (Tr. 178.)  As described above, in 2010 Dr. Weber examined Plaintiff's heart and ran an echocardiogram that showed normal heart function.  (Tr. 25.)  And Dr. Ebinger also conducted a 12-lead echocardiogram on Plaintiff's heart in February 2011 that showed that "[a]ll cardiac intervals were within normal limits." (Tr. 254.)  Later testing by Dr. R. Scott Lazzara, M.D., in August 2011 found that Plaintiff's heart operates at a "regular rate and rhythm without enlargement." (Tr. 267.)  As such, Dr. Lazzara found no indications of heart failure.  (*Id.*)  Plaintiff was prescribed Midodrine, a drug used to treat low blood pressure, for her syncope.  (Tr. 358.)  On September 23, 2011, Dr. Ebinger found that the drug was working well because it "has aborted all of her events."  (*Id.*)

Plaintiff also suffers from hidradenitis suppurativa, a "chronic skin condition that features pea-sized to marble-sized lumps under the skin" that are "painful and

may break open and drain foul-smelling pus."  Mayo Clinic, *Hidradenitis suppurativa*, http://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/basics/definition/con-20027334 (last visited Mar. 20, 2015).  Plaintiff has reported problems with hidradenitis suppurativa in her right axillar area.  (Tr. 352.)  Plaintiff treats this condition with antibiotics, incision and drainage, and surgery.  (Tr. 24, 363.)

Furthermore, Plaintiff suffers from asthma and depression.  She is a smoker and has been advised to stop; she has cut down on her smoking from "a pack a day to 5 cigarettes a day."  (Tr. 394.)  She treats her asthma through the use of an inhaler.  (Tr. 303.)  With regard to her depression, Plaintiff attempted suicide in 1997 and is bipolar.  (Tr. 269, 271.)  Her global assessment of function score ("GAF")[2] is 52, which "indicates moderate difficulty in functioning."  (Tr. 26.)  On August 3, 2011, Psychologist Matthew P. Dickson, Ph.D., evaluated Plaintiff and found that Plaintiff's "mental abilities to understand, attend to, remember, and carry out instructions are not impaired."  (*Id.*)  Further, Dr. Lazzara found that Plaintiff's "insight and judgment are both appropriate" and that Plaintiff has normal concentration.  (Tr. 264.)

---

[2] A Global Assessment of Functioning or GAF score represents the examiner's judgment of the individual's overall level of psychological functioning on a scale of 0-100. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Health Disorders* 32-34 (4th ed. 2000).

Additionally, Plaintiff has been diagnosed with osteoarthritis[3].  On August 25, 2011, Dr. Lazzara found that this condition was "mild" and that Plaintiff's range of motion is "mildly diminished."  (Tr. 267.)  Despite this mild diminishment, Dr. Lazzara found Plaintiff "neurologically stable."  (*Id.*)  Plaintiff also reports that she is self-sufficient, and she cooks and cleans for herself.  (Tr. 172.)  She can also walk for 20 minutes at a time, sit for 45 minutes at a time, and lift up to 20 pounds.  (Tr. 177.)

## B. ALJ Findings

Plaintiff was 40-years-old on the date of the hearing.  (*See* Tr. 38.)  She has an extensive work history as she maintained near constant employment from November 1991 until she ceased working on July 17, 2009.  (*See* Tr. 181.)  Plaintiff last worked as a manager of a convenience store for almost two years, ending on July 17, 2009.  (*Id.*)  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had engaged in substantial gainful activity after the alleged disability onset date of February 25, 1997.  (Tr. 20.)  The ALJ nonetheless found that there were continuous 12-month periods after the alleged onset of disability where Plaintiff did not engage in substantial gainful activity.  (*Id.*)  The ALJ's remaining findings were limited to the periods where Plaintiff did not engage in substantial gainful activity.  (*Id.*)  At step two, the ALJ

---

[3] Osteoarthritis is the "most common form of arthritis" and "occurs when the protective cartilage on the ends of [one's] bones wears down over time."  Mayo Clinic, *Osteoarthritis*, http://www.mayoclinic.org/diseases-conditions/osteoarthritis/basics/definition/con-20014749 (last visited Mar. 23, 2015).

found that Plaintiff suffered from numerous severe impairments including
neurocardiogenic syncope, hidradenitis suppurativa, asthma, osteoarthritis, obesity
and an affective disorder.  (Tr. 21.)  At step three, the ALJ found no evidence that
Plaintiff's combination of impairments met or equaled one of the listings in the
regulations.  (*Id.*)  At step four, the ALJ determined that Plaintiff retained the
following Residual Functioning Capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform
> sedentary work … with the following additional limitations:  the
> opportunity to alternate position for up to 5 minutes
> approximately every 60 minutes; no climbing of ladders;
> occasional climbing of stairs, crouching, and stooping; no exposure
> to hazards; no concentrated exposure to fumes, dusts, or gases; no
> exposure to extremes of temperature or humidity; no driving as a
> work duty; simple, routine, low stress work (including no fast
> paced work, no work that involves quotas, and no assembly line
> work); no work that requires interaction with the public; and only
> occasional contact with co-workers and supervisors, limited to
> routine interactions.

(Tr. 22.)  Also at step four, the ALJ noted that Plaintiff had past relevant work
experience as a cashier, inventory clerk, service writer and as a mail carrier.  (Tr.
28.)  The ALJ then found that Plaintiff was unable to perform her past relevant
work based on the vocational expert's ("VE's") finding that the requirements of
these jobs exceeded Plaintiff's RFC.  (*Id.*)  At step five, the ALJ denied Plaintiff
benefits because she found that Plaintiff could perform jobs that "exist in significant
numbers in the national economy."  (*Id.*)

### C.  Plaintiff's Claims of Error

Plaintiff's sparse and formulaic brief alleges that the ALJ's determination that Plaintiff could perform other jobs in the national economy lacked substantial evidence because the hypothetical questions posed to the VE did not "accurately describe Ms. Holcolm in all significant, relevant respects…"  According to Plaintiff, when considering all of her medical impairments, there is no work that she can perform.

Plaintiff also challenges the ALJ's credibility determination.  Plaintiff alleges that the ALJ erred in not finding Plaintiff credible despite Plaintiff's assertions that she suffered from "severe cardiology problems" and required frequent naps throughout the day.

### D.  Commissioner's Motion for Summary Judgment

The Commissioner contends that the Court should affirm the ALJ's decision because of two main reasons: (1) Plaintiff's brief is so perfunctory that she has essentially waived any challenge to the Commissioner's final decision and (2) the ALJ's decision is supported by substantial evidence.

The Commissioner argues that Plaintiff waived any challenges to the ALJ's determination because the brief consists of boilerplate case law with little legal argument or analysis of the particular facts involved in the case.  The Commissioner highlights numerous cases in this district where Plaintiff's counsel has been admonished for presenting "wholly insufficient and undeveloped"

arguments. *See Dice v. Comm'r of Soc. Sec.*, No. 12-cv-11784, 2013 WL 2155528 (E.D. Mich. Apr. 19, 2013) (Hluchaniuk, M.J.); *see also Burger v. Comm'r of Social Sec.*, No. 12-11716, 2013 WL 2285375 (E.D. Mich. May 23, 2013).

The Commissioner also charges that Plaintiff's lone discernible argument is opposite to well-established case law. The Commissioner states that in essence Plaintiff is arguing that the ALJ was required to find her testimony credible. In response, the Commissioner emphasizes that "[i]t is well established that an ALJ…is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In addition to the waiver argument, the Commissioner states that the ALJ's step five determination finding that Plaintiff could perform jobs existing in significant numbers in the national economy is supported by substantial evidence. The Commissioner maintains that the ALJ "fully accommodated the limiting effects of Plaintiff's impairments" in making her assessment of Plaintiff's RFC. The ALJ gave weight to the medical record and found Plaintiff to have a lower RFC than the state medical consultant. (Tr. 22-27.)

Further, the ALJ discredited Plaintiff's testimony about suffering from severe cardiac problems because Plaintiff's claim was inconsistent with the medical evidence in the record, Plaintiff's course of treatment and her daily activities. Specifically, the ALJ noted that the medical evidence in the record amply showed

that Plaintiff had normal cardiac function and that her other impairments, such as postpartum cardiomyopathy and hidradenitis suppurativa, were either completely resolved or controlled by medication.  In sum, the Commissioner argues that the ALJ "reasonably discounted" Plaintiff's claim that she had disabling impairments based on the medical evidence, Plaintiff's reported activities and her course of treatment.

### III.    DISCUSSION

#### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

9

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In deciding whether substantial evidence supports the ALJ's decision, the reviewing court does not "try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

10

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing

11

court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x. 521, 526 (6th Cir. 2006).

## B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

12

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

13

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse*, 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C. Analysis

### 1. The ALJ's Credibility Determination is Supported by Substantial Evidence.

Plaintiff argues that the ALJ's credibility analysis is flawed and requests that the Court re-evaluate her medical records. (Dkt. 8, p. 11.) Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d

14

589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536 (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).

The Sixth Circuit has explained that courts defer to the ALJ's credibility determinations because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters*, 127 F.3d at 531. Rather, when a complaint of pain or other symptoms is at issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if

15

the claimant's claims regarding the level of his pain are credible.  SSR 96-7p, 1996

WL 374186, at *1; see also 20 C.F.R. § 404.1529.  Consistency between the

plaintiff's subjective complaints and the record evidence 'tends to support the

credibility of the [plaintiff], while inconsistency, although not necessarily defeating

[it], should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F.

App'x. 852, 863 (6th Cir. 2011).

Having carefully reviewed the entire record, the Court finds that the ALJ's

credibility determination is supported by substantial evidence.  At the hearing,

Plaintiff asserted that she has a heart condition that prevents her from working

because it makes her susceptible to passing out.  (Tr. 41.)  Plaintiff reiterated her

fears of cardiac-induced fainting in her Adult Function Report.  (Tr. 179.)

In a careful and thorough opinion, the ALJ found that Plaintiff's claims were

not entirely credible and instead found that Plaintiff was not disabled since she

retained sufficient RFC to obtain a job that exists in significant numbers in the

national economy.

The ALJ's finding is amply supported by the medical records.  According to

the medical records, Plaintiff has completely recovered from her post-partum heart

condition.  The records demonstrate that Plaintiff's heart has normal systolic

function and that the pain in her chest is not cardiac in origin.  Moreover, the

medical records do not support Plaintiff's contention that she has a heart condition

that causes her to faint.   The echocardiograms in the file all show normal heart

16

function.  Further, Plaintiff has taken well to Midodrine which prevents fainting episodes.

And, as discussed above, Plaintiff's other medical conditions are under control.  While painful and chronic, her hidradenitis suppurativa is currently managed through antibiotics and other procedures.  Further, the ALJ noted that Plaintiff's mental state is adequate since her psychological examination revealed that though depressed, Plaintiff's "psychomotor activity level appeared to be normal."  (Tr. 26.)  Plaintiff can handle stress about as well as others, can carry out instructions and respond appropriately to others.  (*Id.*)  In sum, the medical records provide substantial evidence for the ALJ's finding that Plaintiff is not disabled.

In addition to the medical records, the evidence of Plaintiff's past work history and activity support the ALJ's finding that Plaintiff is not disabled. Plaintiff claims that her disability originated in February 1997.  However, Plaintiff has extensive employment history from 1997 until she ceased working in mid-July 2009.  Thus, despite Plaintiff's claims of cardiac disease, Plaintiff was able to remain employed over 12 years since the beginning of her alleged disability.  The record also shows that Plaintiff is highly independent and can cook and clean for herself.  In addition, Plaintiff is able to run errands independently and does not require assistance with self-care.

For these reasons, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

## 2.  The ALJ did not err in the formulation of the hypothetical questions presented to the VE.

Plaintiff also charges that the ALJ's hypothetical questions to the VE did not properly present Plaintiff's limitations.  In formulating hypothetical questions, an ALJ is only required to incorporate the limitations that she deems credible.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").  The ALJ posed the following question:

> Please assume, Ms. Robb, someone who has done the jobs you've listed in your analysis, and I would like to you to assume a person who was born in 1972 and who has a high school education.  Assume a person who cannot perform more than light work as that term is defined in the Social Security regulations and in the Dictionary of Occupational Titles.  In addition, assume that the person should be able to alternate position for up to five minutes approximately every 60 minutes.  The person should not have to climb ladders and can only occasionally climb stairs, stoop, and crouch. There should be no exposure to hazards.  There should be no concentrated exposure to fumes, dust or gasses.  No exposure to extremes of temperature or humidity.  And there should be no driving as a work duty. Assume a person who is limited to work that is simple and routine and low stress in the sense that there should be no fast-paced work.  Could a person with those limitations do any of the jobs that you listed on your form?

Here, the ALJ's hypothetical incorporated all of the limitations included in Plaintiff's RFC.  As such, the ALJ's hypothetical question incorporated all of the limitations that she deemed credible.  Thus, the ALJ did not err in formulating her hypothetical question to the VE.

18

### 3. Plaintiff Waived all Challenges to the ALJ's Conclusions By Failing to Properly Develop Her Arguments.

The Commissioner also argues that Plaintiff has waived all challenges to the ALJ's determination because of her perfunctory brief.  The Court concurs.  As Defendant notes, "[issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Here, Plaintiff's sparse brief fails to develop any legal argument in a meaningful way.  Essentially, Plaintiff complains that the ALJ's decision lacks substantial evidence because the ALJ did not give Plaintiff's testimony the weight that Plaintiff desired.  Plaintiff does not explain why the ALJ's determination lacked substantial evidence, nor does she specifically reference the medical records. Plaintiff also makes no attempt to explain why the ALJ was required to accept her testimony as true.  The Court therefore finds that Plaintiff's cursory and conclusory briefing of the issues amounts to such a perfunctory and poorly developed argument that these issues have been effectively waived. By submitting such a deficient brief, Plaintiff waived any argument that she had against the ALJ's decision.

### 4. Sanctions Against Plaintiff's Counsel

On March 24th, 2015, the Court issued its decision in *Swadling v. Comm'r of Soc. Sec.*, E.D. Mich. Case No. 14-10251.  In the decision, this Court adopted

19

Magistrate Judge Majzoub's Report and Recommendation, imposed sanctions on Plaintiff's Counsel, Richard J. Doud, and referred him to the Chief Judge under E.D. Mich. L.R. 83.22(c)(3) to determine whether disciplinary proceedings under Local Rule 83.22(e) should be instituted.  In this action, Attorney Doud's brief consists of the same type of deficient advocacy for which this Court sanctioned him in *Swadling*.  However, the Court will refrain from imposing further sanctions at this time in light of the previous sanctions and this Court's referral of Attorney Doud to the Chief Judge.

## IV.  CONCLUSION

For the reasons set for above, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**. Furthermore, the Court **AFFIRMS** the findings and conclusions of the ALJ.

**SO ORDERED.**

Dated:  March 31, 2015                    s/Terrence G. Berg
                                          TERRENCE G. BERG
                                          UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 31, 2015, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager

20